United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL LONGSHORE & WAREHOUSE UNION-PACIFIC MARITIME ASSOCIATION WELFARE PLAN BOARD OF TRUSTEES and INTERNATIONAL LONGSHORE & WAREHOUSE UNION-PACIFIC MARITIME ASSOCIATION WELFARE PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTH GATE AMBULATORY SURGERY CENTER, LLC, a California limited liability company; JEFFREY T. HO, M.D., an individual; STEWART GOLDSTEIN, M.D., an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. C 11-01215 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND VACATING HEARING** |

**INTRODUCTION**

In this ERISA action for recovery of alleged overpayments and erroneous payments, defendants bring parallel motions to dismiss the claims against them. For the reasons stated below, the motion by Dr. Stewart Goldstein is **GRANTED IN PART AND DENIED IN PART**, and the motion by South Gate Ambulatory Surgery Center and Dr. Jeffrey T. Ho is **DENIED**.

**STATEMENT**

The operative complaint alleges the following. Plaintiff International Longshore & Warehouse Union-Pacific Maritime Association Welfare Plan is an employee welfare benefit plan established pursuant to ERISA. Plaintiff International Longshore & Warehouse Union-Pacific Maritime Association Welfare Plan Board of Trustees is the plan administrator and serves as the plan's fiduciary (First Amd. Compl. ¶¶ 10–11).

The plan provides coverage to its members for medical care that is medically necessary, meets established treatment protocols in the Unites States, and is not experimental. By its own terms, the plan pays only usual, customary, and reasonable rates for services that are covered (*id.* at ¶¶ 21–22).

Defendants Jeffrey T. Ho, M.D., and Stewart Goldstein, M.D., are physicians who have provided medical services to plan members at defendant South Gate Ambulatory Surgery Center's facilities. Defendants submitted claims to the plan for services provided to plan members, and plaintiffs paid them. In this action, plaintiffs now seek the return of some of the money they paid to the doctors for those claims (*id.* at ¶¶ 12–15, 26–27).

The plan provided, in pertinent part (*id.* at ¶ 19):

> If a third party provider of Benefits hereunder, through error, misrepresentation, or fraud, receives payment of Welfare Fund assets in an amount greater than the amount authorized under the Plan, the Trustees, in their sole, absolute, and unreviewable discretion, may collect the amount of any such overpayment(s) and any amounts expended or incurred in investigating the matter and collecting the overpayment(s) (including, but not limited to, expenses of the Trustees' staff and reasonable fees of any investigators, attorneys, and/or consultants retained by or on behalf of the Trustees). The Trustees also may, in their sole, absolute, and unreviewable discretion, disallow any future assigned Benefit claims presented by such provider, and take any other action they may deem necessary or appropriate under the circumstances.

A recent ongoing review by professional experts revealed that a substantial percentage of the medical services underlying the claims defendants submitted to the plan since approximately 2008 were not medically necessary, not generally accepted in the medical field, and/or not performed in accordance with established treatment protocols. Additionally, the

amounts billed exceeded the usual, customary, and reasonable rates for medical services covered by the plan. Plaintiffs therefore assert that the claims were not covered by the plan (*id.* at ¶¶ 27–29).

Defendants are not plan members, but plaintiffs allege that defendants submitted the claims pursuant to contractual assignments from plan members. Plaintiffs argue that in doing so, defendants agreed to the plan's provision requiring the repayment of erroneous payments and overpayments (*id.* at ¶ 26).

In March 2011, plaintiffs filed the instant action seeking restitution of those payments deemed to be overpayments or payments made to the defendants in error. Plaintiffs filed a first amended complaint in July 2011, alleging the existence of an equitable lien or a constructive trust on the overpayments and erroneous payments, and seeking restitution and declaratory and injunctive relief (Dkt. Nos. 1, 42). Defendants South Gate and Dr. Ho move to dismiss plaintiffs' first amended complaint for failure to state a claim or in the alternative to stay the action pending resolution of a state court action involving most of the same parties. Dr. Goldstein moves to dismiss the complaint for failure to state a claim and also moves to dismiss the plan as a plaintiff for a lack of standing. This order follows full briefing.

## ANALYSIS

**1. DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM.**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. FRCP 12(b)(6); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949–50.[1] Dismissal is only proper if there is either a "lack of a cognizable legal theory" or "the

---

[1] Unless indicated otherwise, internal citations are omitted from all quoted authorities.

3

absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

A plan fiduciary may bring a civil action under ERISA "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. 1132(a)(3). The Supreme Court has construed Section 1132(a)(3), also known as Section 502(a)(3) of ERISA, "to authorize only 'those categories of relief that were *typically* available in equity.'" *Sereboff v. Mid Atl. Med. Servs., Inc.,* 547 U.S. 356, 361 (2006).

The parties do not dispute that the board is a fiduciary under ERISA. The legal issue presented is whether the relief requested by plaintiffs, labeled restitution, is "equitable" under Section 502(a)(3)(B). Plaintiffs seek the return of money payments, but "the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief." *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011). The Supreme Court has defined what constitutes equitable relief, stating that the nature of the recovery sought by the plaintiff and the basis for the claim must both be equitable. *Sereboff*, 547 U.S. at 361–63. Here, plaintiffs have pled sufficient facts to make it plausible that their claim sounds in equity.

In the operative complaint, plaintiffs state that their claims for relief are equitable because an equitable lien by agreement or a constructive trust exists on the payments in question. This order finds that plaintiffs have pled sufficient facts to make the existence of an equitable lien by agreement plausible. Because pleading sufficient facts to support one plausible theory is enough to survive a Rule 12(b)(6) motion, this order does not reach the theory of a constructive trust.

Plaintiffs allege that the plan accepts benefit claims only from members and providers to whom members have assigned their claims. The Summary Plan Description states: "Assignment. Generally, Welfare Plan benefits or the rights to receive such benefits may not be assigned to any third party other than doctors or other providers of care." (First Amd. Compl. ¶ 20). Furthermore, plaintiffs allege that defendants submitted claims for services directly to the plan by holding

4

1 contractual assignments from patients who were plan members (*id.* at ¶¶ 26, 39). Taking these
2 allegations as true, plaintiffs have alleged sufficient facts to make it plausible that the funds
3 received by defendants were subject to the same contingencies as if dispersed to actual plan
4 members because defendants agreed to an equitable lien on the funds. Thus, the nature
5 (restitution) and the basis (lien by agreement) for the claims is equitable and properly brought
6 under ERISA.

7 All three defendants raise the same arguments in response to plaintiffs' equitable lien
8 contentions. Defendants argue that the assignment provision in the contract relied on by plaintiffs
9 conflicts with other contract language, and that the scope of the assignment was not intended to
10 include all plan conditions. This is not enough. All reasonable inferences must be drawn in favor
11 of plaintiffs at this stage of the proceedings, and plaintiffs' claims will not be dismissed based on
12 conflicting views of the plan documents. At best, these arguments present questions of contract
13 interpretation to be decided on summary judgment or at trial, with the benefits of discovery and a
14 full evidentiary record.

15 Defendants further argue that the relief sought is not equitable because plaintiffs have not
16 identified a particular fund distinct from defendants' general assets to which the lien has attached.
17 No such identification is required. The Supreme Court decision on which defendants rely states
18 that "no tracing requirement . . . applies to equitable liens *by agreement or assignment*."
19 *Sereboff*, 547 U.S. at 365 (emphasis added). Plaintiffs' plan document states that overpayments
20 received by third party providers may be recovered by the plan (First Amd. Compl. ¶ 19). This
21 is sufficient.

22 Defendant Goldstein next argues that the use of "error" in the plan language refers to a
23 mistake of fact or a clerical mistake, not the type of overpayment plaintiff alleges. Again,
24 plaintiffs' claims will not be dismissed due to conflicting contract interpretations. Defendant
25 Goldstein cites only to an out-of-circuit decision discussing the interpretation of "excess
26 payments," which is not the term at issue here. *See Cent. States, Se. and Sw. Areas Health &*

27
28

5

*Welfare Fund v. Pathology Labs. of Ark.*, 71 F.3d 1251, 1255 (7th Cir. 1995). Moreover, the plan provides that the board is the sole interpreter of the plan terms (First Amd. Compl. Exh. 1 at ¶ 5.11).

Plaintiffs have pled sufficient facts to make it plausible that defendants, via contractual assignment from plan members, agreed to a lien on the alleged overpayments and erroneous payments when they submitted claims to the plan. Defendants have not carried their burden of showing that plaintiffs' claims do not seek equitable relief proper under ERISA. Accordingly, both motions to dismiss the complaint for failure to state a claim are **DENIED**.

### 2. MOTION BY DEFENDANT GOLDSTEIN TO DISMISS THE PLAN FOR LACK OF STANDING.

Defendant Goldstein moves to dismiss the plan as a plaintiff under FRCP 12(b)(1) for lack of standing to bring a civil action under ERISA. It is a plaintiff's burden to prove it has standing. The plan has failed to do so.

Section 502(e) of ERISA grants exclusive jurisdiction to the district courts to hear "civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, [or] fiduciary." 29 U.S.C. 1132(e)(1). Similarly, Section 502(a)(3) states that "a participant, beneficiary, or fiduciary" has standing to enforce any ERISA provisions. Federal courts do not have jurisdiction to hear a civil action under ERISA that is brought by someone other than a "participant, beneficiary, or fiduciary." *See Local 159, 342, 343, 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 981–83 (9th Cir. 1999).

Because the plan does not fit within any of these categories, it cannot sue under ERISA. Our court of appeals has clearly stated, "the Trust Funds, as ERISA plans, are not fiduciaries entitled to sue under ERISA. Accordingly, subject matter [jurisdiction] does not exist under ERISA over this action . . . ." *Id.* at 983–84. So too here. The plan does not have standing to sue under ERISA.

Plaintiffs do not argue that the plan is a participant, beneficiary, or fiduciary under ERISA. Instead, they assert that this distinction is a "technicality of no consequence" because it is undisputed that the board, also suing as a plaintiff, does have standing. Plaintiffs cite to

6

decisions from other circuits and claim the courts are split on the issue of whether to allow a plan itself to sue. This authority is not controlling, and the law in this circuit is clear. *See id.* at 981–84. Defendant Goldstein's motion to dismiss the plan for lack of standing is **GRANTED**.

* * *

Defendants South Gate and Dr. Ho also moved under FRCP 12(b)(1) to stay this action pending the outcome of a state court action. That motion, however, was withdrawn in their reply brief (Reply Br. 9–10). The stay motion is therefore **MOOT**. Defendants South Gate and Dr. Ho requested judicial notice of six documents that do not bear on the foregoing analysis; that request is **DENIED AS MOOT**.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss for failure to state a claim are both **DENIED**. Defendant Goldstein's motion to dismiss the plan for lack of standing is **GRANTED**. The International Longshore & Warehouse Union-Pacific Maritime Association Welfare Plan is no longer a party to this action. The motion by defendants South Gate and Dr. Ho to stay this action was withdrawn and is therefore **MOOT**. Their request for judicial notice is **DENIED AS MOOT**. The motion hearing set for October 6, 2011, is **VACATED**.

**IT IS SO ORDERED.**

Dated: September 12, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE