United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL LONGSHORE & WAREHOUSE UNION-PACIFIC MARITIME ASSOCIATION WELFARE PLAN BOARD OF TRUSTEES,<br><br>     Plaintiff,<br><br>  v.<br><br>SOUTH GATE AMBULATORY SURGERY CENTER, LLC and JEFFREY HO,<br><br>     Defendants.<br>_____/<br>AND RELATED COUNTERCLAIMS.<br>_____/ | No. C 11-01215 WHA<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND VACATING HEARING** |

**INTRODUCTION**

In this ERISA action for recovery of alleged overpayments, defendants move for summary judgment of all claims against them. For the reasons stated below, the motion is **DENIED**. The hearing scheduled for October 4 is **VACATED**.

**STATEMENT**

The background of this action has been described in a prior order denying defendants' motion to dismiss (Dkt. No. 69). International Longshore & Warehouse Union-Pacific Maritime Association Welfare Plan is an ERISA plan. Plaintiff International Longshore & Warehouse Union-Pacific Maritime Association Welfare Plan Board of Trustees is the plan administrator and trustee. Defendant Jeffrey Ho, M.D., is a physician who provided medical services to plan

1  members at defendant South Gate Ambulatory Surgery Center's facilities. The plan paid claims
2  submitted by defendants for medical services provided to plan members.

3        The plan reimbursed "usual, customary, and reasonable" rates for medical care that was
4  medically necessary, met established treatment protocols in the United States, and was not
5  experimental (Wechsler Decl. ¶ 12; Dkt. No. 132 at A182, A186). Dr. Ho and other providers at
6  South Gate billed the plan for many procedures that were not medically necessary and inflated
7  charges beyond reasonable rates (Busch Decl. ¶ 6; Pasvankas Decl. ¶¶ 3–8; Wechsler Decl. ¶¶ 2,
8  17). Unaware of this overbilling at the time, the board permitted defendants to submit invoices
9  as the plan members' assignees (Wechsler Decl. ¶ 14). In this action, the board now seeks the
10 return of money paid to defendants (Compl. ¶¶ 12–15, 26–27).[1]

11       Last year, defendants moved to dismiss this action on the grounds that the restitution
12 remedy sought by the board is not an equitable remedy provided by Section 502(a)(3) of ERISA.
13 The order denying defendants' motion to dismiss rejected this argument, assuming the truth of
14 all facts pled. The order held that plaintiffs had pled sufficient facts to make the existence of an
15 equitable lien by agreement plausible: "Plaintiffs have pled sufficient facts to make it plausible
16 that defendants, via contractual assignment from plan members, agreed to a lien on the alleged
17 overpayments and erroneous payments when they submitted claims to the plan" (Dkt. No. 69
18 at 6). Now, in a summary judgment motion, defendants argue there was no lien by agreement
19 because all assignments by plan members were void pursuant to an anti-assignment provision.

## ANALYSIS

21       Summary judgment is proper when the "pleadings, depositions, answers to
22 interrogatories, and admissions on file, together with the affidavits, show that there is no genuine
23 issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
24 FRCP 56(c). An issue is genuine only if there is sufficient evidence for a reasonable fact-finder

---

[1] Defendants request judicial notice of certain plan documents. The board has not objected and in fact cites those same plan documents, which were also appended to the operative complaint. Therefore, defendants' request to take judicial notice is granted for the following documents: the plan's agreement (Dkt. No. 132 at A21–150), the summary plan description (Dkt. No. 132 at A151–71), the coastwise indemnity plan (Dkt. No. 132 at A172–207), and South Gate's financial responsibility forms (Dkt. No. 132 at B208–10).

2

1  to find for the non-moving party, and material only if the fact may affect the outcome of the case.
2  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

3        A plan fiduciary may bring a civil action under ERISA to obtain "appropriate equitable
4  relief" to redress violations of the terms of the plan. 29 U.S.C. 1132(a)(3). The Supreme Court
5  has construed this statute "to authorize only 'those categories of relief that were typically
6  available in equity.'" *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006). There is
7  no dispute that the board is a fiduciary able to seek equitable claims pursuant to
8  Section 502(a)(3)(B).

9        The dispute on summary judgment is whether there existed an equitable lien by
10 agreement, subject to restitution, on the overpayments to defendants. Our court of appeals
11 recently established three criteria for securing an equitable lien by agreement in a Section
12 502(a)(3)(B) ERISA action:

> First, there must be a promise by the beneficiary to reimburse the
> fiduciary for benefits paid under the plan in the event of a recovery
> from a third party. Second, the reimbursement agreement must
> specifically identify a particular fund, distinct from the
> beneficiary's general assets, from which the fiduciary will be
> reimbursed. Third, the funds specifically identified by the
> fiduciary must be within the possession and control of the
> beneficiary.

*Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1092–93 (9th Cir. 2012)
(quotations marks and citations omitted). A party need not be a signatory to a plan to be bound
by it. *CGI Technologies and Solutions, Inc. v. Rose*, 683 F.3d 1113, 1117–18 (9th Cir. 2012).
The narrow issue raised by defendants' motion for summary judgment is whether assignments by
plan members to defendants were void *ab initio*.

      The gravamen of the complaint is that defendants overbilled the plan for medical charges
above and beyond what was medical necessary and at unreasonable rates. The ultimate question
is whether the plan, through its trustee, has a right to seek restitution of these overpayments.
This involves issues that go beyond the four-corners of the plan documents and assignment
provisions. Defendants' motion, however, presents only a narrow contractual question of
whether there existed a non-void assignment provision to healthcare providers under the plan's
terms. Defendants contend that the plan members could not assign anything and therefore any

1   lien cannot be by virtue of assignment. This argument is rejected because the record supports
2   that the plan members could assign their benefits to defendants. It is unnecessary to reach other
3   issues in this action not raised by defendants. For example, this order does not reach other
4   theories of equitable relief, such as constructive trust, nor address other elements required for a
5   lien by agreement, such as identification of a particular fund and evidence that said fund is
6   within the possession and control of defendants. Defendants also do not distinguish between
7   assignment of medical benefits and delegation of duties to reimburse for overbilling; instead,
8   defendants argue that all contractual assignments by plan members were void pursuant to an
9   anti-assignment provision.

   After reviewing the plan documents in the present record, this order finds that a reasonable interpretation can be made that the plan allowed for assignments to defendants, raising a genuine dispute of material fact and precluding summary judgment. In interpreting the terms of an ERISA plan, a court must examine the plan documents as a whole, and if unambiguous, construe them as a matter of law. *Vaughn v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008).

> [T]erms in a pension plan should be interpreted in an ordinary and popular sense as would a person of average intelligence and experience. When disputes arise as to the meaning of one or more terms, we first look to the explicit language of the agreement to determine the clear intent of the parties. The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion. An ambiguity exists when the terms or words of a pension plan are subject to more than one reasonable interpretation. In fact, only by excluding all alternative readings as unreasonable may we find that a plan's language is plain and unambiguous.

*McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000) (quotation marks and citations omitted).

Both parties agree that the plan's agreement, the plan's summary plan description, and the coastwise indemnity plan are the "foundational" documents for interpreting the plan's terms (Br. 8–9, 16–17; *see* Opp. 4). Both parties also agree that defendants required the plan's beneficiaries, to

> assign to [South Gate] all benefits under any insurance policy, health plan, worker's compensation or other third party payor

4

>    liable to the patient, in consideration of the services rendered by
>    [South Gate].  The patient also hereby assigns benefits to all
>    physicians involved in the care of the patient while at [South Gate]
>    (the physicians billings will usually be billed separately from
>    [South Gate's] billings)

(Dkt. No. 132 at B-208).  Again, the sole issue contested on summary judgment is whether the plan's terms allowed assignments to defendants (*see* Reply Br. 14–16).[2]

Contrary to defendants, there was express language in the plan's agreement that allowed for assignment of medical claims to healthcare providers and collection of overpayments by the board.  Paragraph 5.74 of the plan's agreement provided:

>    If *a third party provider* of Benefits hereunder, through error, misrepresentation, or fraud, receives payment of Welfare Fund assets in an amount greater than the amount authorized under the Plan, *the Trustees, in their sole, absolute, and unreviewable discretion, may collect the amount of any such overpayment(s)* and any amounts expended or incurred in investigating the matter and collecting the overpayment(s) (including, but not limited to, expenses of the Trustees' staff and reasonable fees of any investigators, attorneys, and/or consultants retained by or on behalf of the Trustees).  The Trustees may, in their sole, absolute, and unreviewable discretion, disallow *any future assigned Benefit claims presented by such provider*, and take any other action they may deem necessary or appropriate under the circumstances."

(Dkt. No. 132 at A90) (emphasis added).  Although the terms "assignment" and "provider" were not defined by the plan's agreement itself, the plan's summary description clarified some of the ambiguity.  The plan's summary description, which defendants admit is a foundational plan document, stated:

>    Assignment.
>
>    Generally, Welfare Plan benefits or the rights to receive such benefits may not be assigned to any third party *other than doctors or other providers of care*."

(Dkt. No. 132 at A167) (emphasis added).  This reasonably suggests that defendants, who were providers of medical care, could have been assigned a beneficiary's medical benefits under the

---

[2] To repeat, both parties agree that the coastwise indemnity plan is a foundational document for purposes of interpreting the plan's terms (Dkt. No. 132 at A172–207).  The coastwide indemnity plan is allegedly the plan's self-funded indemnity program for medical, surgical, and hospital benefits (Welscher Decl. ¶ 8).  Neither side, however, has pointed to the provision where the plan's agreement expressly incorporates by reference the coastwise indemnity plan.  Nevertheless, for purposes of this motion, this order will rely on the parties' representation that the coastwise indemnity plan's terms are "foundational" for interpreting the plan's terms.

5

1  plan's assignment terms. Since this was the sole issue raised by defendants's motion, their

2  request for summary judgment is **DENIED**.

3  Defendants argue that assignments of plan benefits were void *ab initio* because of a

4  subsequent anti-assignment paragraph also found in the plan's agreement. Paragraph 6.24 of the

5  plan's agreement stated:

> No Benefits, monies or property of the Welfare Fund shall be subject in any manner to anticipation, alienation, sale, transfer, *assignment*, pledge, encumbrance, or charge by any Longshoreman, Pensioner, Social Security Retiree, or any other person for any purpose *other than by the Trustees for purposes herein provided*, *and any attempt to do so shall be void*; provided, that pursuant to Section 609(b) of ERISA, (a) payment for Benefits with respect to a person with Eligibility shall be made in accordance with any assignment of right made by or on behalf of such person as required by state plan for medical assistance approved under title XIX of the Social Security Act pursuant to section 1912(a)(1) of such Act (as in effect on the date of the enactment of the Omnibus Budget Reconciliation Act of 1993) (hereinafter referred to as a "State Approved Medical Assistance Plan"), and (b) to the extent that payment has been made under a State Approved Medical Assistance Plan in any case for Benefits, for which the Plan has a legal liability, payment by the Plan for such Benefits will be made in accordance with any state law that provides that the State has acquired the rights with respect to a Participant to such payment for such Benefits.

(Dkt. No. 132 at A92) (emphasis added). According to defendants, this anti-assignment provision rendered void attempts by the plan's beneficiaries to assign their medical benefits to defendants. Not necessarily. One key exception in the above-quoted provision came from the phrase "other than by the Trustees for purposes herein provided." It is ambiguous whether the "herein" meant within the paragraph itself — which went on to discuss purposes that are irrelevant to the issue in this action, such as assignment for person with coverage under a State Medicaid program — or the entire plan agreement, which had the purpose of providing medical coverage for beneficiaries.

The board argues that the anti-assignment provision stood only for the proposition that assignments by plan members were void *if* the board rejected those assignments. That is, assignments accepted as valid by the board were enforceable. There is evidence in the record that the board permitted assignments to defendants (Wechsler ¶ 14). There is also sufficient evidence to support the board's interpretation of the plan's terms and raise a genuine dispute of

6

1  material fact. *First*, the coastwise indemnity plan, another agreed-upon foundational plan

2  document, described the board as falling outside the anti-assignment provision:

3        Under provisions of the [plan's agreement], Welfare Plan benefits
      are not subject to assignment by a participant, beneficiary or any
4        other person *except the Trustees*, and any attempt to do so shall be
      void.

5  (Dkt. No. 132 at A183) (emphasis added). *Second*, the plan's summary description described the

6  above-quoted provision as follows (Dkt. No. 132 at A167):

7        Generally, Welfare Plan benefits or the rights to receive such
8        benefits may not be assigned to *any third party other than doctors
      or other providers of care*. However, ERISA provides that in the
9        case of persons with coverage under a State Medicaid program,
      automatic assignment of benefits to State Medicaid agencies is
10       enforceable against the Plan.

11 This description of the anti-assignment provision expressly stated that healthcare providers could

12 be assigned the plan's benefits.

13       Defendants also base their argument on a provision of coastwise indemnity plan that

14 stated:

15       Where benefits are paid directly to a doctor, hospital or other
      provider of care (other than a State Medicaid agency), such direct
16       payments are provided at the discretion of the Trustees as a
      convenience to Plan participants and do not imply an enforceable
17       assignment of Welfare benefits or the right to receive such
      benefits.

18 (Dkt. No. 132 at A183). This provision is insufficient to preclude a genuine dispute regarding

19 assignment. The plain language of this provision stood only for the proposition that direct

20 payments themselves "d[id] not imply an enforceable assignment." The provision was silent as

21 to whether the Board *could have* approved assignments expressly or by means other than direct

22 payment. Indeed, one reasonable inference of this language, by negative implication, is that the

23 board could have expressly approved assignments to a doctor or hospital, such as defendants, but

24 that direct payment by itself should not have been interpreted to mean express approval of an

25 assignment. That is, if all assignments were void *ab initio*, as defendants argue, there would be

26 no need to include a superfluous provision about implications of direct payments.

27

28

7

**CONCLUSION**

For the reasons stated, the motion for summary judgment is **DENIED**. The hearing scheduled for October 4 is **VACATED**.

**IT IS SO ORDERED.**

Dated: September 24, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE